**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **ARCELORMITTAL TEXAS HBI LLC,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO: 2:25-cv-41** |
| | § | |
| **M&L SUPPLY LLC AND** | § | |
| **ARONCO USA, INC.** | § | |
| *Defendants.* | § | |

### PLAINTIFF ARCELORMITTAL TEXAS HBI LLC 'S ORIGINAL COMPLAINT

Plaintiff ArcelorMittal Texas HBI LLC f/k/a Voestalpine Texas LLC files this Original Complaint against Defendants M&L Supply LLC and Aronco USA, Inc and would respectfully show the Court the following:

### I.    PARTIES

1.    Plaintiff ArcelorMittal Texas HBI LLC f/k/a Voestalpine Texas LLC ("*AMTX*") is a limited liability company with its principal place of business in Nueces County.

2.    Defendant M&L Supply LLC ("*M&L*") is a foreign limited liability company with its principal place of business in Doral, Florida. M&L engages in business in Texas, but has not designated or maintained a resident agent for service of process in Texas. Therefore, M&L may be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701. Additionally, M&L may be served through its Florida registered agent, Francine E. Paredes at 3508 NW 114 AVE, Doral, Florida 33178.

3.    Defendant Aronco USA, Inc. ("*Aronco*") is a Texas corporation with its principal place of business in San Patricio County. Aronco may be served with process by serving its registered agent, Benzer Tax and Business Services LLC at 12946 Dairy Ashford Road, Suite 330, Sugar Land, Texas 77478.

1

4917-5342-8759v.1

## II.    JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. A corporation's citizenship is determined by the place of its incorporation and its principal place of business. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). An LLC's citizenship for purposes of diversity jurisdiction is determined by the **citizenship of its members**. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). In the Fifth Circuit, the citizenship of a foreign business entity is that of the country under which the entity is organized, if that country treats the entity as a "juridical person," or an economically independent entity. *See Stiftung v. Plains Mktg. L.P.*, 603 F.3d 295, 298 (5th Cir. 2010).

5.      Because Plaintiff is an LLC, its citizenship is determined by the citizenship of its members. Plaintiff's sole member is ArcelorMittal Texas HBI Holdings, LLC ("HBI Holdings"). As an LLC, Plaintiff's citizenship will be determined based upon the citizenship of HBI Holdings.

6.      HBI Holdings has two members: voestalpine Steel US Holding LLC ("voestalpine") and ArcelorMittal Texas Holdings LLC. HBI Holdings' citizenship will be based upon the citizenship of ArcelorMittal Texas Holdings LLC and voestalpine.

7.      ArcelorMittal Texas Holdings LLC's sole member is ArcelorMittal North America Holdings LLC. ArcelorMittal Texas Holdings LLC's citizenship will be determined based on the citizenship of ArcelorMittal North America Holdings LLC.

8.      The sole member of ArcelorMittal North America Holdings LLC is ArcelorMittal Holdings LLC. ArcelorMittal North America Holdings LLC's citizenship will be determined based upon the citizenship of ArcelorMittal Holdings LLC.

4917-5342-8759v.1

9. The sole member of ArcelorMittal Holdings LLC is ArcelorMittal USA Holdings LLC. ArcelorMittal Holdings LLC's citizenship will be determined based upon the citizenship of ArcelorMittal USA Holdings LLC.

10. The sole member of ArcelorMittal USA Holdings LLC is Ispat Inland S.A.R.L., a Luxembourg entity known as an S.A.R.L. In Luxembourg, an S.A.R.L. is an independent juridical entity—it is an entity with a "separate legal personality."[1] The entity is subject to Luxembourg's corporate tax.[2] Accordingly, Ispat Inland S.A.R.L. is a citizen of Luxembourg for citizenship purposes. Because Ispat Inland S.A.R.L. is a citizen of Luxembourg for diversity purposes, so too are the LLCs whose citizenship is determined based upon Ispat Inland S.A.R.L.'s. Specifically, AMTX is considered a citizen of Luxembourg for diversity purposes, because its chain of membership leads to Ispat Inland S.A.R.L.

11. voestalpine's sole member is voestalpine US Holding LLC. voestalpine's citizenship will be determined based upon the citizenship of voestalpine US Holding LLC.

12. voestalpine US Holding LLC's sole member is voestalpine US Holding GmbH, an Austrian entity known as a GmbH. In Austria, a GmbH is a type of limited liability company controlled by shareholders.[3] A GmbH is a separate taxable entity in Austria.[4] It is thus an independent juridical entity for purposes of diversity jurisdiction. voestalpine US Holding GmbH is, therefore, a citizen of Austria for diversity purposes. Because voestalpine US Holding GmbH is a citizen of Austria for diversity purposes, so too are the LLCs whose citizenship is determined

---

[1] Peter Adriaansen, Julius Heino, and Robin Pollet, *Chambers and Partners*, Corporate Tax 2024, Luxembourg (March 19, 2024), available at https://practiceguides.chambers.com/practice-guides/corporate-tax-2024/luxembourg#:~:text=A%20SARL%20is%20probably%20the,board%20and%20a%20supervisory%20board).
[2] *Id.*
[3] Clemens Philipp Schindler and Daniel Kropf, *Chambers and Partners*, Corporate Tax 2024, Austria (May 31, 2024), available at https://practiceguides.chambers.com/practice-guides/comparison/904/14259/20401-20402-20403-20404-20405-20406-20407-20408-20409.
[4] *Id.*

3

based upon voestalpine US Holding GmbH.  Specifically, voestalpine, AMTX, and HBI Holdings are considered citizens of Austria for diversity purposes.  Accordingly, for purposes of diversity jurisdiction, Plaintiff is a citizen of Luxembourg and Austria.

13.     Aronco is a Texas corporation with its principal place of business in San Patricio County, Texas.  Accordingly, Aronco is a citizen of Texas for purposes of diversity jurisdiction.

14.     M&L is an LLC, so its citizenship is determined by the citizenship of its members. M&L's sole known member is an individual, Francine Paredes, who is domiciled in Florida. Accordingly, M&L is a citizen of Florida for diversity purposes.

15.     Because Plaintiff is a citizen of Luxembourg and Austria, and Defendants are citizens of Texas and Florida, complete diversity exists, and this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

16.     This Court has both general and specific personal jurisdiction over M&L because it regularly transacts business in Texas and has purposefully availed itself of the privileges and benefits of conducting business in Texas.[5] Additionally, M&L expressly agreed to submit to the personal jurisdiction of Texas in its agreement with AMTX, which states "[e]ach party irrevocably and unconditionally submits to the exclusive jurisdiction of the…courts located in Nueces County, Texas." M&L has had continuous and systematic contacts with Texas, including entering into multiple agreements with AMTX to supply goods to AMTX's facility in Portland, Texas; and repeatedly sending M&L representatives to AMTX's facility in Portland, Texas to attend inspection and evaluate the goods it sold.

---

[5] *See* TEX. CIV. PRAC. & REM. CODE § 17.042.

4917-5342-8759v.1

17.     The Court has both general and specific personal jurisdiction over Aronco because it is formed under Texas law, its principal place of business is in Texas, and it contracted to provide services at AMTX's facility in Portland, Texas.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Aronco's principal place of business is in San Patricio County, Texas and therefore Aronco resides within this District. Venue also is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because all or substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

### III.     FACTUAL ALLEGATIONS

19.     Non-party ArcelorMittal is one of the leading steelmakers in the world. AMTX is a subsidiary of ArcelorMittal and operates a hot briquetted iron ("*HBI*") facility in Portland, Texas.

20.     HBI is a premium form of direct reduced iron, which is used as the preferred feed material for demanding steel grades.

21.     AMTX's sophisticated facility took more than two years of construction and substantial investment. When the HBI facility began operations in October 2016, it was the world's largest and most state-of-the-art direct reduced iron plant.

22.     A vital part of the production is the need to preheat certain feed gasses, which are used in the reduction process. These feed gasses are preheated by processing through a Heat Recovery Unit ("*HRU*").

23.     The HRU is composed of 24 bundles of tubing operating under pressure which pipe-feed gasses through heated areas of the facility. Importantly, these feed gasses must remain within the bundles while they pass through these heated areas of the facility.

24.     AMTX cannot produce HBI without the proper operation of the HRU.

5

25. The original bundles remained in operation from 2016 until 20 of the 24 bundles were replaced in 2022. This suit seeks damages from M&L and Aronco for their roles in selling and installing the bundles, which were installed in 2022 and leaked feed gasses into its facility.

## A. AGREEMENT WITH M&L

26. On or about April 22, 2022, AMTX submitted Purchase Order No. 4522188535 ("*Purchase Order*") to M&L for the fabrication of 24 bundles to replace the original bundles in the HRU at a cost of more than $12 million.

27. The Purchase Order explicitly required the bundles be designed, fabricated, stamped, and tested in accordance with ASME BPVC Section VIII, Division 1. In short, this means M&L agreed to provide bundles, which met the rigorous standards applicable to pressure vessels operating above 15 psig. Implicit in that requirement was the expectation that the bundles would be leak free.

28. M&L accepted the Purchase Order and agreed to be bound by Voestalpine Texas LLC's terms and conditions ("*Terms & Conditions*"). M&L explicitly warranted, among other things, that the bundles shall "(a) be … free from any defects in workmanship, material, and design; (b) conform to the applicable specifications; (c) meet all specified performance requirements…."

29. M&L also agreed to indemnify AMTX for all losses, expenses and damages which may have resulted in any way from any breach of warranty or negligence of M&L or its agents, employees, suppliers, or subcontractors.

## B. AGREEMENT WITH ARONCO

30. On or about October 19, 2022, AMTX and Aronco entered into the Master Professional Services Agreement For Construction and Infrastructure Services ("*MPSA*") for the installation and repair of components in the HRU.

4917-5342-8759v.1

31.     In paragraph 10.2 of the MPSA, Aronco warranted that "it shall perform the Services…in a professional and workmanlike manner in accordance with best industry standards for similar services and shall devote adequate resources to meet its obligations under this Agreement."

32.     Additionally, in section 11 of the MPSA, Aronco agreed to indemnify and hold AMTX harmless from any damages "arising out of or in any way related" to Aronco's work or the project.

## C.  ARONCO'S INSTALLATION OF 20 BUNDLES

33.     By the fall of 2022, M&L completed the fabrication of 20 of the 24 bundles.

34.     On or about November 23, 2022, AMTX and Aronco entered into the Statement of Work for Heat Recovery Bundles ("*SOW*") to replace the bundles in the HRU.

35.     In the SOW, Aronco warranted that all equipment furnished and all work performed will: (1) conform with all specifications and requirements of this [SOW], and (2) be sufficient to fulfill the operating conditions specified in this [SOW]. Aronco also warranted that the Work would "be performed in accordance with the best professional practices and procedures and all Laws and all other requirements of this [SOW]."

36.     In late 2022, AMTX shutdown the HBI facility in order to revamp the HRU and install the 20 completed bundles. The installation alone cost AMTX more than $13 million.

37.     The shutdown ended on December 18, 2022 and AMTX resumed operations at the HBI facility. After operations resumed following this late 2022 shutdown, carbon monoxide ("*CO*") emissions began to steadily climb starting on or about February 8, 2023, indicating the presence of leaks within the HRU.

4917-5342-8759v.1

38.    By May 2023, the average CO emissions had drastically increased, indicating the presence of a substantial leak. The dramatic increase in CO emissions forced AMTX to reduce production and plan a shutdown to investigate and repair the apparent leaks.

39.    AMTX informed M&L of the leaks and their impact on AMTX's operations but M&L made no offer to remedy the issue.

### D. ARONCO'S ATTEMPTED, BUT FAILED REPAIR

40.    On or about September 14, 2023, Aronco and AMTX entered into a second SOW ("*Second SOW*") wherein Aronco was contracted to help identify the source of the leaks in the HRU and perform repairs. In the Second SOW, Aronco again warranted that all equipment furnished and all work performed will: (1) conform with all specifications and requirements of this [SOW], and (2) be sufficient to fulfill the operating conditions specified in this [SOW]. Aronco also warranted that the Work would "be performed in accordance with the best professional practices and procedures and all Laws and all other requirements of this [SOW]."

41.    On September 16, 2023, AMTX was forced to shutter all production for more than eighteen days to repair the leaks in the HRU and install the four remaining bundles purchased from M&L. AMTX incurred more than $3 million to have Aronco identify and cap leaking sections of tubes in the HRU bundles and install the four remaining bundles purchased from M&L. Aronco then conducted pressure testing on the bundles in the HRU and confirmed no leaks. M&L made no offer to contribute to the cost of the attempted repair.

42.    The shutdown ended on October 4, 2023, and AMTX began to reheat the facility.

43.    Unfortunately, by October 10, 2023, CO emissions again increased dramatically. The extent of these leaks required AMTX to replace all 24 bundles inside the HRU. AMTX again informed M&L of the leaks and the impact on AMTX's operations.

4917-5342-8759v.1

### E.  REPLACEMENT OF THE BUNDLES

44.   Shortly after the discovery of the October 10, 2023 leaks, AMTX began the laborious and costly process to locate replacement bundles and coordinate the shutdown of the facility and repair the HRU.

45.   Ultimately, AMTX implemented a total shutdown of production in February 2024. The shutdown lasted for several weeks in order for AMTX to replace all the bundles M&L had supplied.

46.   After all the bundles were replaced, both M&L and Aronco refused to honor their warranties until an investigation was completed.

### F.  INVESTIGATION

47.   Once completed, it became clear that M&L and Aronco's requests were merely a delay tactic. Though M&L and Aronco were invited to and did attend several on-site inspections during the investigation, M&L and Aronco refused to share in the costs of the investigation and have once again refused to honor their express and implied warranties. Additionally, M&L and Aronco have repudiated their indemnity obligations to hold AMTX harmless from the physical and financial damages incurred as a result of the leaking bundles M&L supplied and which Aronco installed and purportedly repaired.

48.   M&L's and Aronco's acts and omissions have caused AMTX substantial financial harm. As a direct and proximate result of M&L's and Aronco's acts and omissions, AMTX has sustained actual economic damages. AMTX was forced to install new bundles in the HRU at a cost of more than $25 million. AMTX also incurred approximately $2 million in costs to investigate the extent and cause of leaks. Finally, the shutdowns to repair and replace the bundles in the HRU, coupled with the inability to operate the facility at its full capacity until the leaks were fixed caused AMTX to lose well over $20 million in lost profits. In total, M&L's and Aronco's

9

acts and omissions have caused AMTX more than $45 million in damages, which it now seeks to recover.

## IV.    CAUSES OF ACTION

### Count I: Breach of Contract against M&L

49.    AMTX adopts each and every statement in the foregoing paragraphs as if set forth fully herein.

50.    AMTX and M&L entered into a valid contract, specifically the Purchase Order.

51.    The Purchase Order explicitly required the bundles be designed, fabricated, stamped, and tested in accordance with ASME BPVC Section VIII, Division 1. Meaning, at the very least the bundles would be leak free.

52.    Further, in the Purchase Order, M&L agreed to be bound by the Terms & Conditions, which were expressly incorporated into the Purchase Order.

53.    Through the Terms & Conditions M&L explicitly warranted, among other things, that the bundles shall "(a) be … free from any defects in workmanship, material, and design; (b) conform to the applicable specifications; (c) meet all specified performance requirements…." M&L also agreed to indemnify AMTX for all losses, expenses and damages which may have resulted in any way from any breach of warranty or negligence of M&L or its agents, employees, suppliers, or subcontractors.

54.    AMTX fully performed its obligations under the Purchase Order.

55.    M&L breached the Purchase Order by failing to provide the contracted for bundles for AMTX's HRU that complied with the specifications and warranties in the Purchase Order. Indeed, the bundles had substantial and pervasive leaks. Further, M&L has refused to honor its indemnification obligation and AMTX has been left to bear the full cost of its losses without.

4917-5342-8759v.1

56.    M&L's breaches have caused AMTX damages, for which M&L is liable, in an amount to be proven at trial and including actual damages (direct, indirect and/or consequential damages); prejudgment and post-judgment interest; costs; and attorneys' fees.

**Count II: Breach of Express Warranty Against M&L**
**(Section 2.313 of the Texas Business and Commerce Code)**

57.    AMTX adopts each and every statement in the foregoing paragraphs as if set forth fully herein.

58.    M&L sold goods, the bundles, to AMTX pursuant to the Purchase Order.

59.    The Purchase Order explicitly required the bundles be designed, fabricated, stamped, and tested in accordance with ASME BPVC Section VIII, Division 1. Meaning, at the very least the bundles would be leak free.

60.    Further, in the Purchase Order, M&L agreed to be bound by the Terms & Conditions, which were expressly incorporated into the Purchase Order.

61.    Through the Terms & Conditions M&L explicitly warranted, among other things, that the bundles shall "(a) be … free from any defects in workmanship, material, and design; (b) conform to the applicable specifications; (c) meet all specified performance requirements….".

62.    M&L promises and affirmations were a part of the basis of the bargain between M&L and AMTX. AMTX relied upon M&L's promises and affirmation in purchasing the bundles from M&L.

63.    The bundles did not comply with M&L's promise and affirmations, described in paragraph above, because the bundles had substantial and pervasive leaks.

64.    AMTX notified M&L of the breaches of its express warranty numerous times, including by letter in November 2023, February 2024, and January 2025 and even invited M&L

11

4917-5342-8759v.1

to attend several inspections during the investigation into the leaking bundles. M&L has not offered to remedy the damages caused by its breach.

65.     M&L's breaches have caused AMTX damages, for which M&L is liable, in an amount to be proven at trial and including actual damages (direct, indirect, incidental, and/or consequential damages); prejudgment and post-judgment interest; costs; and attorneys' fees.

**Count III – Breach of Implied Warranty of Merchantability Against M&L**
**(Section 2.314 of the Texas Business and Commerce Code)**

66.     AMTX adopts each and every statement in the foregoing paragraphs as if set forth fully herein.

67.     M&L is a merchant of tubing bundles for HRUs and sold AMTX 24 bundles for the HRU at AMTX's facility.

68.     The bundles were not merchantable when M&L tendered them to AMTX because the bundles exhibited substantial leaks once they were put in operation making them unfit for the ordinary purposes, in which the bundles were used. Thus, M&L breached the implied warranty of merchantability set forth in Section 2.314 of the Texas UCC. *See* TEX. BUS. & COM. CODE § 2.314.

69.     AMTX notified M&L of the breaches of its express warranty numerous times, including by letter in November 2023, February 2024, and January 2025 and even invited M&L to attend several inspections during the investigation into the leaking bundles. M&L has not offered to remedy the damages caused by its breach.

70.     M&L's breach of warranty directly and proximately caused AMTX's injury, resulting in damages, for which M&L is liable, in an amount to be proven at trial and including actual damages (direct, indirect, incidental, and/or consequential damages); prejudgment and post-judgment interest; and costs.

**Count IV – Breach of Implied Warranty of Fitness For a Particular Purpose Against M&L**
**(Section 2.315 of the Texas Business and Commerce Code)**

71.    AMTX adopts each and every statement in the foregoing paragraphs as if set forth fully herein.

72.    M&L sold AMTX 24 bundles for the HRU at AMTX's facility.

73.    M&L knew that AMTX was buying the bundles for the HRU and AMTX's facility and that AMTX was relying upon M&L's skill in order to fabricate the bundles for the HRU.

74.    AMTX did rely upon M&L's skill and judgment and entered into the Purchase Order with M&L.

75.    The bundles had substantial leaks and were unfit for their purpose, which is a breach of the implied warranty of fitness for a particular purpose as set forth in Section 2.315 of the Texas UCC. *See* Tex. Bus. & Com. Code § 2.315.

76.    AMTX notified M&L of the breaches of its express warranty numerous times, including by letter in November 2023, February 2024, and January 2025 and even invited M&L to attend several inspections during the investigation into the leaking bundles. M&L has not offered to remedy the damages caused by its breach.

77.    M&L's breach of warranty directly and proximately caused AMTX's injury, resulting in damages, for which M&L is liable, in an amount to be proven at trial and including actual damages (direct, indirect, incidental, and/or consequential damages); prejudgment and post-judgment interest; and costs.

## Count V – Negligence Against M&L

78.    AMTX adopts each and every statement in the foregoing paragraphs as if set forth fully herein.

4917-5342-8759v.1

79.      M&L owed a duty to AMTX to perform its work in a good and workmanlike manner and in accordance with industry standards.

80.      M&L breached its duty by failing to fabricate the bundles consistent with industry standard. As an example, M&L's welding was performed negligently, which created an ensuing loss when fatigue cracks in the bundle tubing near the weld began to develop, which created through-paths for the processes gasses within the bundles to escape into the Flue Gas interfering with production. The fatigue cracking and impact on production are separate and independent injuries from M&L's failure to follow industry standards in the welding of the bundles.

81.      M&L's breach of its duty proximately caused AMTX's injury, resulting in damages, for which M&L is liable, in an amount to be proven at trial and including actual damages (direct, indirect and/or consequential damages); prejudgment and post-judgment interest; and costs.

### Count VI – Breach of Contract (the MPSA) Against Aronco

82.      AMTX adopts each and every statement in the foregoing paragraphs as if set forth fully herein.

83.      AMTX and Aronco entered into a valid contract, the MPSA, for the installation and repair of components in the HRU. In paragraph 10.2 of the MPSA, Aronco warranted that "it shall perform the Services…in a professional and workmanlike manner in accordance with best industry standards for similar services and shall devote adequate resources to meet its obligations under this Agreement." Additionally, in section 11 of the MPSA, Aronco agreed to indemnify and hold AMTX harmless from any damages "arising out of or in any way related" to Aronco's work or the project.

84.      AMTX fully performed its obligations under the MPSA.

4917-5342-8759v.1

85.     Aronco breached the MPSA when it failed to install the bundles in the HRU in accordance with the standards agreed to in the MPSA as the bundles exhibited substantial leaks after their installation.

86.     Aronco further breached the MPSA as Aronco has failed to honor its obligation to indemnify and hold AMTX harmless from any damages arising out of or in any way related to Aronco's work. Indeed, Aronco has not offered to remedy the damages arising from Aronco's work.

87.     Aronco's breaches have caused AMTX damages, for which Aronco is liable, in an amount to be proven at trial and including actual damages (direct, indirect and/or consequential damages); prejudgment and post-judgment interest; costs; and attorneys' fees.

### Count VII – Breach of Contract (the SOW) Against Aronco

88.     AMTX adopts each and every statement in the foregoing paragraphs as if set forth fully herein.

89.     Shortly after entering into the MPSA, AMTX and Aronco entered into a valid contract, the SOW, for the replacement of the bundles in the HRU. In the SOW, Aronco warranted that all equipment furnished and all work performed will: (1) conform with all specifications and requirements of this [SOW], and (2) be sufficient to fulfill the operating conditions specified in this [SOW]. Aronco also warranted that the Work would "be performed in accordance with the best professional practices and procedures and all Laws and all other requirements of this [SOW]."

90.     AMTX fully performed its obligations under the SOW.

91.     Aronco breached the SOW when it failed to install the bundles in the HRU in accordance with the specifications and requirements in the SOW.

4917-5342-8759v.1

92.     Aronco's breaches have caused AMTX damages, for which Aronco is liable, in an amount to be proven at trial and including actual damages (direct, indirect and/or consequential damages); prejudgment and post-judgment interest; costs; and attorneys' fees.

### Count VIII – Breach of Contract (The Second SOW) Against Aronco

93.     AMTX adopts each and every statement in the foregoing paragraphs as if set forth fully herein.

94.     In the fall of 2023, Aronco and AMTX entered into a valid contract, the Second SOW. In the Second SOW agreed to help identify the source of the leaks in the HRU and repair them. In the Second SOW, Aronco warranted that all equipment furnished and all work performed will: (1) conform with all specifications and requirements of this [Second SOW], and (2) be sufficient to fulfill the operating conditions specified in this [Second SOW]. Aronco also warranted that the Work would "be performed in accordance with the best professional practices and procedures and all Laws and all other requirements of this [Second SOW]."

95.     AMTX fully performed its obligations under the SOW.

96.     Aronco breached the Second SOW when it failed to repair the bundles in the HRU in accordance with the specifications and requirements in the Second SOW.

97.     Aronco's breaches have caused AMTX damages, for which Aronco is liable, in an amount to be proven at trial and including actual damages (direct, indirect and/or consequential damages); prejudgment and post-judgment interest; costs; and attorneys' fees.

### Count IX – Negligence Against Aronco

98.     AMTX adopts each and every statement in the foregoing paragraphs as if set forth fully herein.

16

4917-5342-8759v.1

99.    Aronco owed a duty to AMTX to perform its work in a good and workmanlike manner and in accordance with industry standards.

100.    Aronco breached its duty by failing to properly install and then properly repair the bundles in order to avoid leaks in the HRU.

101.    Additionally, Aronco's failure to properly install or repair the bundles created ensuing losses where processes gasses from within the bundles were permitted to escape and cause substantial impediments to production. The impact on production is a separate and independent injury apart from Aronco's failures n installing and repairing the bundles in accordance with industry standards.

102.    Aronco's breach of its duty proximately caused Arcelo's injury, resulting in damages, for which Aronco is liable, in an amount to be proven at trial and including actual damages (direct, indirect and/or consequential damages); prejudgment and post-judgment interest; and costs.

### Count X – Breach of Express Warranty
### Against Aronco [the MPSA]

103.    AMTX adopts each and every statement in the foregoing paragraphs as if set forth fully herein.

104.    AMTX and Aronco entered into a valid contract, the MPSA, for the installation and repair of components in the HRU. In paragraph 10.2 of the MPSA, Aronco warranted that "it shall perform the Services…in a professional and workmanlike manner in accordance with best industry standards for similar services and shall devote adequate resources to meet its obligations under this Agreement." Additionally, in section 11 of the MPSA, Aronco agreed to indemnify and hold AMTX harmless from any damages "arising out of or in any way related" to Aronco's work or the project.

17

105.     Aronco's promises and affirmations were a part of the basis of the bargain between Aronco and AMTX. AMTX relied upon Aronco's promises and affirmation in purchasing the equipment and services provided under the MPSA.

106.     The services and/or equipment provided by Aronco do not comply with the promises and affirmations, described above and in the MPSA as the bundles exhibited substantial leaks after their installation.

107.     AMTX notified Aronco of the breaches of its express warranty numerous times, and Aronco has not offered to remedy the damages caused by its breach.

108.     Aronco breaches have caused AMTX damages, for which Aronco is liable, in an amount to be proven at trial and including actual damages (direct, indirect, incidental, and/or consequential damages); prejudgment and post-judgment interest; costs; and attorneys' fees.

**Count XI – Breach of Express Warranty**
**Against Aronco [the Sow]**

109.     AMTX adopts each and every statement in the foregoing paragraphs as if set forth fully herein.

110.     Shortly after entering into the MPSA, AMTX and Aronco entered into a valid contract, the SOW, for the replacement of the bundles in the HRU. In the SOW, Aronco warranted that all equipment furnished and all work performed will: (1) conform with all specifications and requirements of this [the SOW], and (2) be sufficient to fulfill the operating conditions specified in this [the SOW]. Aronco also warranted that the Work would "be performed in accordance with the best professional practices and procedures and all Laws and all other requirements of this [the SOW]."

18

111.    Aronco's promises and affirmations were a part of the basis of the bargain between Aronco and AMTX. AMTX relied upon Aronco's promises and affirmation in purchasing the equipment and services provided under the Sow.

112.    The services and/or equipment provided by Aronco do not comply with the promises and affirmations, described above and in the Sow, as the bundles exhibited substantial leaks after their installation.

113.    AMTX notified Aronco of the breaches of its express warranty numerous times, and Aronco has not offered to remedy the damages caused by its breach.

114.    Aronco breaches have caused AMTX damages, for which Aronco is liable, in an amount to be proven at trial and including actual damages (direct, indirect, incidental, and/or consequential damages); prejudgment and post-judgment interest; costs; and attorneys' fees.

**Count XII – Breach of Express Warranty**
**Against Aronco [Second Sow]**

115.    AMTX adopts each and every statement in the foregoing paragraphs as if set forth fully herein.

116.    In the fall of 2023, Aronco and AMTX entered into a valid contract, the Second SOW. In the Second SOW, Aronco warranted that all equipment furnished and all work performed will: (1) conform with all specifications and requirements of this [Second SOW], and (2) be sufficient to fulfill the operating conditions specified in this [Second SOW]. Aronco also warranted that the Work would "be performed in accordance with the best professional practices and procedures and all Laws and all other requirements of this [Second SOW]."

117.    Aronco's promises and affirmations were a part of the basis of the bargain between Aronco and AMTX. AMTX relied upon Aronco's promises and affirmation in purchasing the equipment and services provided under the Second Sow.

19

118.    The services and/or equipment provided by Aronco do not comply with the promises and affirmations, described above and in the Second Sow, as the bundles exhibited substantial leaks after their installation.

119.    AMTX notified Aronco of the breaches of its express warranty numerous times, and Aronco has not offered to remedy the damages caused by its breach.

120.    Aronco breaches have caused AMTX damages, for which Aronco is liable, in an amount to be proven at trial and including actual damages (direct, indirect, incidental, and/or consequential damages); prejudgment and post-judgment interest; costs; and attorneys' fees

## V.    ATTORNEYS FEES, COSTS AND INTEREST

121.    AMTX adopts each and every statement in the foregoing paragraphs as if set forth fully herein.

122.    As a result of Defendants' wrongful conduct and breaches, AMTX retained the undersigned counsel to assist in seeking recovery for their claims, including the filing of this Complaint and any further amended or supplemental complaints, discovery, motions, and trial. AMTX incurred and will continue to incur attorneys' fees and costs in bringing this action.

123.    Pursuant to section 38.001 of the Texas Civil Practice and Remedies Code, AMTX has made proper presentation of its claims on Defendants and is entitled to recover reasonable and necessary attorneys' fees incurred in the prosecution of its claims against Defendants.

4917-5342-8759v.1

## VI.    PRAYER FOR RELIEF

124.    WHEREFORE, AMTX respectfully requests that Defendants be cited to appear herein, that AMTX have judgment in its favor against Defendants and at a final hearing award AMTX as follows:

a. Actual damages (direct, indirect, and consequential) within the jurisdictional limits of this Court;

b. Pre-judgment and post-judgment interest;

c. Attorneys' fees and costs; and

d. All such other relief at law or in equity to which AMTX may be justly entitled.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By:*/s/ Michael A. Harvey*
**MICHAEL A. HARVEY**
State Bar No. 24058352
Federal ID No. 917759
700 Milam Street, Suite 800
Houston, Texas 77002
Telephone:  (713) 222-4015
Facsimile:  (713) 222-5834
mharvey@munsch.com

**ATTORNEY-IN-CHARGE FOR
ARCELORMITTAL TEXAS HBI LLC**

21

**OF COUNSEL:**

**MUNSCH HARDT KOPF & HARR, P.C.**

**Justin Ratley**
State Bar No. 24093011
700 Milam Street, Suite 800
Houston, Texas 77002
Telephone:  (713) 222-4087
jratley@munsch.com

**Cameron Asby**
State Bar No. 24078160
700 Milam Street, Suite 800
Houston, Texas 77002
Telephone:  (713) 222-1482
casby@munsch.com

22

4917-5342-8759v.1